ORIGINAL

# In the United States Court of Federal Claims

No. 15-173C
Filed: June 4, 2015

**FILED**

JUN − 4 2015

U.S. COURT OF
FEDERAL CLAIMS

* * * * * * * * * * * * * * *

**MIGUEL ILAW,**

          **Plaintiff,**

      **v.**

**UNITED STATES,**

          **Defendant.**

* * * * * * * * * * * * * * *

<u>Pro Se</u>; <u>In Forma Pauperis</u>; Lack of
Subject Matter Jurisdiction; Due
Process; Civil Rights; Tort; Request
to Transfer to District Court.

**Miguel Ilaw**, San Jose, CA, <u>pro se</u>.

    **Mariana T. Acevedo**, Trial Attorney, Commercial Litigation Branch, Civil Division,
United States Department of Justice, Washington, D.C. for the defendant. With her was
**Robert J. Kirschman, Jr.**, Director, Commercial Litigation Branch, and **Benjamin L.
Mizer**, Principal Deputy Assistant Attorney General, Civil Division, Washington, D.C.

## O P I N I O N

<u>**HORN, J.**</u>

### BACKGROUND

    <u>Pro se</u> plaintiff Miguel Ilaw filed suit in this court on February 24, 2015, against the
United States, Judge Lucy H. Koh of the United States District Court for the Northern
District of California, and Littler Mendelson, P.C. Plaintiff alleges violations of his
constitutional rights under the Fifth and Fourteenth Amendments, as well as his civil rights
under 42 U.S.C. §§ 1983 and 1985 (2012). He also alleges a "conspiratorial objective to
obstruct, or defeat due course of justice," and a "tort of outrage / physical illness."[1] Not

---

[1] Along with his <u>pro se</u> complaint, plaintiff submitted a February 24, 2015, "Application to
Proceed <u>In Forma Pauperis</u>," asserting that he is unable to pay the required filing fees,
and requesting waiver of court costs and fees. His Application indicates that he is
unemployed, and that his last date of employment was September 2010, a position for
which he was receiving $3,000.00 per month. He also indicates that he received other
sources of income in the past twelve months, specifically, financial assistance from his
sister, brother-in-law, and friend, amounting to "at least a total of $ 200.00 each month."

long after filing his complaint in this court, and prior to defendant's response to his complaint, plaintiff filed a motion for voluntary dismissal in which he requests a transfer of his case to the United States District Court for the District of Columbia. Defendant filed a response supporting the motion for voluntary dismissal, but opposes a transfer of the case, and instead recommends summary dismissal. Plaintiff opposes summary dismissal, and argues that "[t]he Court should not summarily dismiss the claim as frivolous as the Court is simply without jurisdiction over the subject matter and private parties."

The allegations in plaintiff's complaint appear to have arisen out of an employment dispute.[2] Plaintiff stated that in April 2003, he began working for the Daughters of Charity

---

He indicates that "[t]he shelter, food, utilities, transportation and medical bills are in debted and in kind." He also states he has $23.04 in cash, or in a bank account.

In order to provide access to this court to those who cannot pay the filing fees mandated by Rule 77.1(c) of the Rules of the United States Court of Federal Claims (RCFC) (2014), the statute at 28 U.S.C. § 1915 (2012) permits a court to allow plaintiffs to file a complaint without payment of fees or security, under specific circumstances. The standard in 28 U.S.C. § 1915(a)(1) for in forma pauperis eligibility is "unable to pay such fees or give security therefor." Determination of what constitutes "unable to pay" or unable to "give security therefor," and, therefore, whether to allow a plaintiff to proceed in forma pauperis is left to the discretion of the presiding judge, based on the information submitted by the plaintiff or plaintiffs. See, e.g., Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 217–18 (1993); Roberson v. United States, 115 Fed. Cl. 234, 239 (2014); Fuentes v. United States, 100 Fed. Cl. 85, 92 (2011). In Fiebelkorn v. United States, the United States Court of Federal Claims indicated:

> [T]he threshold for a motion to proceed in forma pauperis is not high: The statute requires that the applicant be "unable to pay such fees." 28 U.S.C. § 1915(a)(1). To be "unable to pay such fees" means that paying such fees would constitute a serious hardship on the plaintiff, not that such payment would render plaintiff destitute.

Fiebelkorn v. United States, 77 Fed. Cl. 59, 62 (2007); see also Brown v. United States, 76 Fed. Cl. 762, 763 (2007). Even if Mr. Ilaw's income level were to qualify him for in forma pauperis status, however, as discussed below, his complaint is being dismissed for lack of jurisdiction.

[2] The factual allegations described in this opinion are pieced together from the instant complaint and selected court filings in this and other courts by Mr. Ilaw, which are based on the same events. See, e.g., Plaintiff's Second Amended Complaint, Ilaw v. Littler Mendelson, P.C., et al., No. 13-cv-04851 (N.D. Cal. Dec. 30, 2013); Plaintiff's Complaint, Ilaw v. United States, No. 12-cv-2001 (N.D. Cal. Apr. 23, 2012); Plaintiff's Complaint, Ilaw v. Daughters of Charity Health Sys., No. 12-cv-00954 (N.D. Cal. Feb. 27, 2012); Appellant's Informal Brief, Ilaw v. Daughters of Charity Health Sys., No. 11-cv-02752 (9th Cir. Feb. 17, 2012); Plaintiff's Complaint, Ilaw v. Unum US, No. 12-cv-00745 (N.D. Cal. Feb. 15, 2012); Plaintiff's Second Amended Complaint, Ilaw v. Daughters of Charity

Health System as an insurance verifier and patient account representative. According to plaintiff, he worked in that position until July 2003. Plaintiff stated that in February 2007, he was contacted regarding a full-time, insurance verifier opening in the Daughters of Charity Health System's Caritas Department. He stated he became part of the Caritas Business Services insurance verification team, which included four female associates. He stated he was the "fifth youngest member and the only male member." He claimed that from 2007 through April 2010 he received favorable annual performance evaluations.

According to plaintiff, in May 2010, plaintiff's insurance verification team was informed of an "urgent reorganization" and was transferred to Daughters of Charity Health System's O'Connor Hospital. Plaintiff claimed he was assigned to work as an insurance verifier in the emergency department, while, according to plaintiff, his female associates were assigned to the admitting department. Plaintiff stated that the Caritas team was also assigned new managers, Mary Ellen Swigert, the O'Connor Hospital Director for Patient Access, and supervisor Sandra Corpus.

Plaintiff claimed that from May through September 2010 he was subject to harassment and discrimination by his new managers. Among other allegations, plaintiff asserts that he was paid less than his similarly situated female counterparts, his managers "berated" him in front of his fellow co-workers for initiating an unauthorized computer transfer, and that he was forced to cover shifts for other employees, while his requests for time off were denied. Plaintiff stated he brought his complaints to Julie Hatcher, the O'Connor Hospital Director of Employment. During his meeting with Ms. Hatcher, plaintiff stated that he was subjected to hostility, harassment, and discrimination by Ms. Swigert and Ms. Corpus. Plaintiff stated he also reported his alleged harassment to Don Briones, Caritas' Executive Director. He complained of hostility, harassment, and discrimination, and requested a transfer to a Caritas installation in Redwood City, California.

Plaintiff stated that on August 4, 2010, he called in sick "for severe palpitation and an abnormal ECG/heart rate at Palo Alto Urgent Care." Plaintiff stated that while he was out sick, he saw a post on Ms. Corpus' Facebook page of a bracelet with the statement "*Birthday present from my Boss.  She's awesome!!*" (emphasis in original). He stated he filmed the Facebook page, "his heart pounding," and showed it to Ms. Hatcher the following day at work. Plaintiff asserted that the "Facebook video is a testimony [sic] that Mary Ellen is giving my other female co-worker Sandra, a 'special' treatment." Plaintiff also stated that he requested "personal/medical leave during investigation" into his harassment claims, which was granted and began on August 6, 2010.

Plaintiff stated that while he was on leave, he sought advice from the Equal Employment Opportunity Commission (EEOC). Plaintiff stated further that the EEOC Intake Coordinator instructed him to ask his employer for "remedy and resolution." Plaintiff stated that on August 26, 2010, he emailed Ms. Hatcher and Ms. Kris DeCossio, the

---

Health Sys., No. 11-cv-02752 (N.D. Cal. Oct. 4, 2011); Plaintiff's Complaint, Ilaw v. Daughters of Charity Health Sys., No. 11-cv-02752 (N.D. Cal. June 7, 2011).

O'Connor Hospital Labor Director, about "transfer, remedy and resolution." Plaintiff stated neither Ms. Hatcher nor Ms. DeCossio replied. Plaintiff alleged that on September 3, 2010, he emailed Ms. Hatcher and Ms. DeCossio about his medical conditions and reported "anxiety, lost sleep, lost appetite, lost weight and frequent heart palpitations." He claimed he attached medical reports and psychiatric treatments by his primary care physician Daniel Shin and mental therapist Evelyn Solis.

Plaintiff stated he returned to work on September 14, 2010, and his employment was terminated at the end of the day. Plaintiff stated he was asked to sign a "Separation Agreement and Complete Release of All Claims," but declined to do so. Plaintiff claimed he was told "it is best to separate because you (Ilaw) cannot work under Swigert's management style," and that Ms. Hatcher had performed an investigation into his claims, concluding that "*Swigert did not do anything wrong.*" (emphasis and parenthetical in original). Plaintiff stated he also was told his emergency department position was no longer available and that there were no available positions in Redwood City. Plaintiff alleged that because he did not sign the separation agreement, he did not receive medical benefits and was not paid for his "stress related time off."

The following day, plaintiff filed a workers' compensation disability claim with the Workers' Compensation Appeals Board at the San Jose, California District Office. Plaintiff stated that the Daughters of Charity Health System hired attorney Kyle Royer as defense counsel in the Workers' Compensation Appeals Board proceeding. He also stated that on November 5, 2010, he underwent an 8-hour qualified medical examination with a Workers' Compensation Appeals Board forensic psychiatrist, Dr. Mohan Nair. The record does not contain any further information on these claims.

On September 16, 2010, plaintiff filed a complaint with the EEOC under Title VII, alleging gender discrimination, and requested a "Notice of Right to Sue." In his complaint to the EEOC, plaintiff named O'Connor Hospital, but did not name Daughters of Charity Health System or Caritas. Plaintiff claims he received his first Title VII "Notice of Right to Sue" on October 20, 2010.[3]

Plaintiff sought legal counsel from attorney David Kornbluh of Miller, Morton, Caillat & Nevis, LLP, and requested that Mr. Kornbluh file a civil action, including Title VII claims, on his behalf against his former employer and "all entities." On November 5, 2010, attorney Kornbluh filed a civil action on plaintiff's behalf against the Daughters of Charity Health System in the Superior Court of Santa Clara County, California, claiming causes of action under gender discrimination, harassment, retaliation, and wrongful termination in violation of public policy. Plaintiff stated he had reminded Mr. Kornbluh the following day of the EEOC 90-day deadline for a Title VII discrimination lawsuit and that he specifically desired to sue three entities: Daughters of Charity Health System, Caritas, and O'Connor Hospital. Plaintiff claimed Mr. Kornbluh "stopped communication with Ilaw

---

[3] Although plaintiff claims he received his "Notice of Right to Sue" letter on October 20, 2010, the record suggests that plaintiff did not receive the actual notice until October 22, 2010.

after [the] state court filing in November" until Mr. Kornbluh contacted him in February 2011, informing him of a "'mandatory' court proceeding."

According to plaintiff, on March 25, 2011, Mr. Kornbluh agreed with the Daughters of Charity Health System's counsel, Littler Mendelson, P.C., to proceed with alternative dispute resolution (ADR) in the State court action. Catherine Gallagher, a retired Santa Clara County, California Superior Court Judge, served as the neutral mediator. Plaintiff stated Mr. Kornbluh instructed him "not to say and reveal too much information during mediation." Plaintiff also stated that Judge Gallagher "started with a lengthy discussion about [the] 2010 economic recession and that employers 'only pay annual salary per employee' based on her litigation experience." Plaintiff claimed Judge Gallagher did not ask him any pertinent questions and that he was just a listener, while she talked with Mr. Kornbluh.

Plaintiff stated that later that day, Judge Gallagher said: "*This case is complicated, with more than 11 witnesses and would take a long time for investigation and trial. It is best to move on with life. The monetary award could be invested in stock and can be finalized today as Defendant's business office closes at 5:30 pm to issue a check.*" (emphasis in original). Plaintiff stated that Mr. Kornbluh added "*[t]he amount (a year salary) is a win-win for you (Ilaw) because I (Kornbluh) cannot guarantee you a win in trial for harassment and punitive damages.*" (emphasis and parentheticals in original). Plaintiff signed a "Settlement Agreement and Complete Release of All Claims" and initialed each page.

According to plaintiff, the following day, Mr. Kornbluh emailed him the entire settlement agreement. Plaintiff stated he found one objectionable provision which stated:

> The Parties recognize that the issues that have resulted in the settlement of ILAW's claims have created an awkward and difficult environment should the Parties ever consider the possibility that ILAW's employment with any DOCHS [Daughters of Charity Health System] Health Ministries, CBS [Caritas Business Services] or related and/or affiliated entity be renewed. Accordingly, ILAW shall not seek employment or re-employment with DEFENDANTS.

(capitalization in original). Plaintiff, therefore, withdrew from the agreement. Plaintiff claimed he "perceived the resolution as discrete post-termination discrimination considering multiple entities for transfer in the Daughters' organization."

On March 28, 2011, plaintiff removed Mr. Kornbluh as his representative for "betrayal and misrepresentation." In an email to Mr. Kornbluh, plaintiff stated:

> As my legal representation, I expected a word by word, full detailed explanation of the settlement agreement and all its provisions by YOU. The omissions of my considerations are not in the final agreement . . . . Title VII is what we agreed, but you showed no compassion to defend me.

(capitalization in original). Plaintiff further stated that he received a bill for Mr. Kornbluh's fees amounting to $16,701.10. Plaintiff claimed he sued Mr. Kornbluh for misrepresentation, and according to plaintiff, Mr. Kornbluh released him of all financial obligation and provided him with attorney-client and work product materials. Plaintiff stated that within those materials he found an email from Mr. Kornbluh to Josh Feldman, a Littler Mendelson, P.C. attorney representing the Daughters of Charity Health System, stating: "*While we agreed to hold off discovery before we mediate to see if we can resolve this, I think it would be helpful if I could get just a copy of Miguel's personal file to the mediation. Let me know if that is possible.*" (emphasis in original).

Plaintiff also wrote a letter to Mr. Feldman, asserting his revocation of the mediation agreement. In the letter, plaintiff stated:

> After signing at the end of the day and went [sic] home without reviewing the agreement, word by word, I was not given enough time to read and fully understand all the provisions. After receiving a copy via email on March 26, Saturday, I am disputing the provisions/agreement not clearly discussed in detail by my attorney, David Kornbluh.

On April 26, 2011, plaintiff moved to dismiss his State action under Title VII, without prejudice. On page two of the pleading, plaintiff handwrote "To pursue TITLE VII violation, I am seeking federal district court to uphold my civil right for complete investigation." (capitalization in original). The State court granted the motion to dismiss.

On September 12, 2011, plaintiff filed another action in the Superior Court of Santa Clara County, California, for "Wrongful Termination in Violation of Public Policy" against Daughters of Charity Health System and Caritas Business Services.[4] The case was assigned to Judge Patricia M. Lucas. Plaintiff attempted to conduct discovery and notified the defendants of his intent to conduct video depositions. He listed "Swigert, Corpus, Odena, Hatcher and female associate Sanford" as the deponents. Plaintiff stated he conducted and filmed some depositions, and submitted the video evidence to the court. According to the plaintiff, the defendants objected to the deposition material on hearsay and authentication grounds and the deposition material was subsequently not allowed into evidence.

Plaintiff also submitted production requests to the defendants, including a request for "[d]ocuments describing, observing, summarizing or referring to any investigation conducted by O'Connor, at any time referring in any way to any employee's job performance." The defendants responded to plaintiff's requests, stating that they "[fail] to specify the documents sought with reasonable particularity and as a result, Defendants cannot respond hereto without speculation."

In October 2012, the defendants filed a motion for summary judgment in the State court action for wrongful termination. According to the plaintiff, the defendants submitted

---

[4] Ilaw v. Daughters of Charity Health Sys., No. 11-cv-208927 (Cal. Super. Ct. Sept. 12, 2011).

a statement from Julie Hatcher, the O'Connor Hospital Director of Employment, in which she indicated:

> Plaintiff referred to Ms. Swigert and Ms. Corpus as "evil spirits" and requested that the Hospital "not waste time in investigation."
>
> . . .
>
> Kris De Cossio, O'Connor's Labor Relations Department, conducted an investigation and interviewed multiple individuals regarding Plaintiff's allegations of harassment, discrimination and a hostile work environment. The investigation did not support Plaintiff's allegations of harassment, discrimination or hostile work environment. During this same time frame, several meetings were held with CBS, O'Connor and DOCHS human resources to discuss Plaintiff's deficient job performance, insubordination, and his mandate to not work with Ms. Swigert and Ms. Corpus. Ultimately, the Hospital concluded that there were no **alternative positions** that were suitable to move Plaintiff into, and because Plaintiff had stated that he would no longer work with Ms. Corpus and/or Ms. Swigert. Defendants were left without any choice but to implement outplacement and a separation package was developed.

(emphasis in original, internal citations omitted). Plaintiff disputed the claims made in Ms. Hatcher's statement. Plaintiff also protested the motion for summary judgment, stating that the defendants had "intentionally obstructed" facts material to his claim by refusing to produce documents and by opposing his deposition material. Plaintiff claimed "*legal malice against Littler* [Littler Mendelson, P.C.]" for "*fast tract* [sic] *summary judgment without full discovery.*" (emphasis in original).

According to the plaintiff, Judge Lucas granted summary judgment in favor of the defendants and entered a judgment against plaintiff in the amount of $3,276.25, for the defendant's litigation costs. Plaintiff stated that Judge Lucas found that the "Defendants had a legitimate, non-retaliatory reason for terminating his employment, namely, that he was repeatedly insubordinate and refused to continue to work with his superiors." In a later proceeding before the United States District Court for the Northern District of California, plaintiff argued the monetary judgment handed down by Judge Lucas was "cruel and unusual punishment" under the Eighth Amendment and "without due process" under the Fourteenth Amendment.

In December 2012, plaintiff sought appellate review of his State court action in the Sixth District Court of Appeal for Santa Clara County, California, through a "Peremptory Writ of Mandate in the First Instance." Plaintiff argued that the summary judgment order "did not consider all material facts . . . and that the Defendants are in bad faith . . . and guilty of perjury." On January 24, 2013, attorney Karin Cogbill, representing the

respondent, filed a Notice of Vexatious Litigant Status.[5] On February 7, 2013, the appellate court dismissed the writ, stating "[p]ermission to file by vexatious litigant is denied as no showing of merit has been made." The appellate court ordered the record of the plaintiff's action to be purged from the docket and sent to the state records center.

In February 2013, plaintiff pleaded "spoliation" and "Obstruction of Justice/Judicial Ethics" to the Supreme Court of California. Plaintiff argued that "Santa Clara County judicial branches are undermined by Littler Mendelson PC's undue influence and abuse of courts; trial court's judge's misconduct; and appellate court's presiding justice's untimely and unlawful destruction of Plaintiff's records . . . this highest court must intervene and restore integrity of defiled courts. . . . The Petitioner is harmed by society." On March 20, 2013, the Supreme Court of California denied the petition for review.

Plaintiff stated that in April 2012, he filed two "Fraud Upon the Court" claims in the Superior Court of Santa Clara County, California, one against the State of California and the Santa Clara County Superior Court, and the other against Littler Mendelson, P.C. and attorney Josh Feldman. Plaintiff stated he "exercised *First Amendment* liberty of speech and the right to petition government in filing fraud claims in protest and utmost mental anguish." (emphasis in original). He claimed the "ADR proceeding was [an] 'illegal transaction' with intent to deceive."

Plaintiff stated that while litigating his previous claim in state court, he found the local rules for ADR in the Superior Court of Santa Clara County, California. Specifically, he noted that he came across "Local Civil Rule 2 Subsection D" titled "MEDIATORS AND NEUTRAL EVALUATORS" (capitalization in original), which stated:

> (4) All participants in the ADR process must participate in good faith.

> (5) In conducting a session, the ADR provider must require attendance of persons with full authority to resolve the dispute.  The provider may not permit a telephone appearance unless good cause was shown in a timely manner before the session.

Plaintiff stated he was "distraught upon March 2012 discovery of court rule violation: i] when all judicial officers did not require the attendance of WCAB Counsel Royer;[6] *and* ii] when all judicial officers did not disclose Ilaw's QME [qualified medical examination] industrial injury diagnosis report during March 25, 2011 state court proceeding."

---

[5] On July 26, 2012, plaintiff was listed as a "Vexatious Litigant" in Santa Clara County, California Superior Court. See Vexatious Litigant List, California Courts, available at http://www.courts.ca.gov/documents/vexlit.pdf.

[6] Plaintiff identified Kyle Royer as counsel for the Daughters of Charity Health System in his claim to the Workers' Compensation Appeals Board at the San Jose, California District Office.

(emphasis and single brackets in original). Plaintiff stated he was "shaking with anger" upon this discovery.

Plaintiff claimed that the "concealed QME report revealed a forensic diagnosis of temporary psychiatric disability: *Adjustment Disorder with Mixed Anxiety* and *Depressed Mood and Psychological Factors Affecting Medical Conditions*." (emphasis in original). Plaintiff stated that the report recommended six months of psychotherapy and pharmacotherapy. Plaintiff argued that the judicial officers' "conscious concealment of industrial injury is intentional infliction of (already-diagnosed) emotional and mental distress." (parenthetical in original). Plaintiff claimed this discovery caused him "further anxiety and depression when Ilaw continued losing sleep and losing enjoyment in life." Plaintiff stated he believed that all judicial officers "consciously 'robbed him of his dignity' with bad faith-orchestrated-dishonest violation of state court rule."

Plaintiff also claimed that Judge Lucas, when presiding over his 2011 wrongful termination claim, and his fraud claim against Littler Mendelson, P.C. and attorney Feldman, "denied him of 'free and equal access' to her court . . . violating his full and equal benefit and protection under government legislated policy and state law." Plaintiff argued Judge Kirwan, when presiding over his fraud claim against the State of California and Santa Clara County Superior Court, had granted him a court fee waiver, but Judge Lucas had declined to do so. Plaintiff claimed that by refusing to waive the court fees, Judge Lucas had violated his rights as an "indigent member of the public" under the Fourteenth Amendment's Equal Protection Clause. He claimed "*judicial* discrimination" (emphasis in original) and "retaliatory animus when Lucas is aware that her colleague Gallagher is accused of fraud in the complaint."

Plaintiff stated that his fraud claim triggered a California "Anti-SLAPP" (Strategic Lawsuit Against Public Participation) statute. See Cal. Civ. Proc. Code § 425.16 (West 2015). According to the plaintiff, defendant Littler Mendelson, P.C. moved to strike the "Fraud Upon this Court" claim pursuant to the anti-SLAPP statute, Section 425.16(b)(1), which states:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim. California Code of Civil Procedure § 425.16(b)(1).

Plaintiff claimed he was "literally slapped for invoking *First Amendment* government petition about fraud inside the court. The Court did not apply corrective action and condoned civil local court rule violation." (emphasis in original). The plaintiff also asserted that "Lucas and Littler concerted [sic] judicial defense to restrict his *First Amendment* right impeding due course of justice." (emphasis in original).

On multiple occasions during plaintiff's State court proceedings, the court was notified of the plaintiff's vexatious litigant status and other litigations.[7] On at least one occasion, the plaintiff was denied permission to file in the State court based on his status as a vexatious litigant.

On June 7, 2011, plaintiff filed an action in the United States District Court for the Northern District of California against the Daughters of Charity Health System.[8] He claimed causes of action under Title VII for gender discrimination, hostile workplace, retaliation, and wrongful termination, and sought one million dollars in damages.  Judge Lucy H. Koh was assigned to the case. On June 7, 2011, the defendant moved to dismiss the complaint, arguing that plaintiff had failed to exhaust his administrative remedies and

---

[7] In addition to the above captioned case, the plaintiff has filed multiple cases in various federal courts, in addition to a multitude of state court actions, raising claims similar to those raised in the case before this court. See, e.g., Ilaw v. Littler Mendelson, P.C. et al., No. 13-cv-04851 (N.D. Cal. Jan. 14, 2014), aff'd, No. 14-15131 (9th Cir. Aug. 18, 2014); Ilaw v. United States of America, No. 12-cv-02001 (N.D. Cal. Jun. 11, 2012) (voluntarily dismissed); Ilaw v. Daughters of Charity Health Sys., No. 12-cv-00954 (N.D. Cal. Mar. 21, 2012) (voluntarily dismissed); Ilaw v. UNUM U.S., No. 12-cv-00745 (N.D. Cal. Mar. 21, 2012) (voluntarily dismissed); Ilaw v. United States of America, No. 11-cv-5000 (N.D. Cal. Mar. 2, 2012) (dismissing plaintiff's complaint without leave to amend, finding "amendment would be futile"); Ilaw v. Daughters of Charity Health Sys., et al., No. 11-cv-02752, 2012 WL 381240 (N.D. Cal. Feb. 6, 2012) (dismissing plaintiff's complaint for failure to exhaust administrative remedies and for failure to allege a sufficient basis for equitable tolling), aff'd, 585 F. App'x 572 (9th Cir. 2014); cert. denied 135 S. Ct. 1412 (2015). See also Ilaw v. Daughters of Charity Health Sys., et al., No. 12-cv-223189 (Cal. Super. Ct. Apr. 26, 2012); Ilaw v. Miller Morton Caillat & Nevis LLP, et al., No. 12-cv-222865 (Cal. Super. Ct. Apr. 20, 2012); Ilaw v. State of California, et al., No. 12-cv-222873 (Cal. Super. Ct. Apr. 20, 2012); Ilaw v. Superior Court, No. 11-cv-208927 (Cal. Super. Ct. Sep. 12, 2011), aff'd, No. H039155 (6th App. Dis. Feb. 7, 2013) (denying permission to file by vexatious litigant), review denied, No. S208644 (Cal. Mar. 20, 2013); Ilaw v. Daughters of Charity Health Sys., No. 11-cv-208927 (Cal. Super. Ct. Sept. 12, 2011), appeal dismissed, No. H039143 (6th App. Dis. Feb. 6, 2013) (appeal abandoned following notification of vexatious litigant); Ilaw v. K. Royer, No. 11-cv-206523 (Cal. Super. Ct. Aug. 3, 2011); Ilaw v. Daughters of Charity Health Sys., et al., No. 10-cv-186728 (Cal. Super. Ct. Nov. 5, 2010) (voluntarily dismissed).

[8] Plaintiff only named the Daughters of Charity Health System as the defendant in his original complaint. See Ilaw v. Daughters of Charity Health Sys., et al., No. 11-cv-02752 (N.D. Cal. June 7, 2011). Plaintiff later added Caritas Business Services and O'Connor Hospital as defendants in a first amended complaint and they remained as named defendants in his second amended complaint. The District Court found that Caritas and O'Connor had not been properly served and they, therefore, did not appear in the action. The subsequent motion to dismiss was filed solely on behalf of the Daughters of Charity Health System. See Order Granting Defendant's Motion to Dismiss with Prejudice, Ilaw v. Daughters of Charity Health Sys., et al., No. 11-cv-02752 (N.D. Cal. Feb. 6, 2012).

that his complaint was time-barred. Plaintiff responded by filing an amended complaint. The defendant filed a motion to dismiss the amended complaint, to which the plaintiff failed to respond. On September 18, 2011, the court dismissed plaintiff's first amended complaint as time-barred, but gave the plaintiff leave to amend his complaint and an "opportunity to allege facts supporting equitable tolling." Ilaw v. Daughters of Charity Health Sys., et al., No. 11-cv-02752, 2011 WL 4368717(N.D. Cal. Sept. 10, 2011).

On October 4, 2011, plaintiff filed a second amended complaint in the District Court for the Northern District of California, in which he argued that his Title VII claim was not time-barred based on "conditions of systemic Title VII violations prior to limitation period, within the limitation period and continuing systemic violation after employment termination." The defendant, once again, moved to dismiss the second amended complaint. In response, plaintiff filed a three-sentence opposition to which he attached a new request for a Right to Sue letter and a new charge of discrimination filed with the EEOC, this time naming the Daughters of Charity Health System. Both documents were dated October 20, 2011.[9] Plaintiff did not attach a "Notice of Right to Sue." Plaintiff states he received a second "Notice of Right to Sue," which allegedly arose out of a "March 25, 2011 . . . refusal to transfer within a big corporation," days after his submission of his second amended complaint.[10] Plaintiff asserts that his alleged second "Notice of Right to Sue" extended the statute of limitations and "*effectuates continuing systemic violation doctrine alleged in SAC* [Second Amended Complaint]." (emphasis in original).

Thereafter, plaintiff filed a "Motion to Shorten Time" on October 24, 2011, following his alleged receipt of the second "Notice of Right to Sue," and requested that the court schedule a status conference in November 2011. According to the plaintiff, defendant Littler Mendelson, P.C. responded to plaintiff's motion and requested that any "such conference not be scheduled until after the hearing on *Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint*" (emphasis in original), which was scheduled for February 2, 2012.

---

[9] Plaintiff's original EEOC complaint only named O'Connor Hospital. It appears that plaintiff attempted to file a new complaint with the EEOC on October 20, 2011 against the Daughters of Charity Health System and Caritas. An EEOC complaint, however, must be filed within 180 days of the last alleged incident of discrimination. The 180 day deadline is extended to 300 days if a state or local agency enforces a law that prohibits employment discrimination on the same basis as in the federal law. See 42 U.S.C. § 2000e-5(e)(1) (2012). Because plaintiff's employment was terminated on September 14, 2010, his second EEOC complaint, filed on October 20, 2011, more than a year later, was time barred.

[10] Plaintiff's employment with Daughters of Charity Health System was terminated on September 14, 2010, but he alleged a "failure to rehire or transfer" occurred on March 25, 2011. The date plaintiff is referring to, March 25, 2011, is the date on which the mediation with Daughters of Charity Health System occurred. There is no evidence in the record indicating that a "failure to rehire or transfer" occurred on this date.

On February 6, 2012, the court granted the defendant's motion to dismiss, with prejudice. See Ilaw v. Daughters of Charity Health Sys., et al., No. 11-cv-02752, 2012 WL 381240, at *8 (N.D. Cal. Feb. 6, 2012). The court found that the plaintiff did not file a charge of discrimination against the defendant "within 180 or even 300 days of the alleged incident of discrimination." Id. at *4. The court also stated that the plaintiff filed an EEOC charge against the Daughters of Charity Health System "more than four months after filing this federal suit, and more than a year after the last alleged incidents of . . . discrimination." Id. Therefore, the court found that plaintiff's second request for a "Notice of Right to Sue" was untimely and stated that it did not "cure his previous failure to exhaust administrative remedies" in regard to his EEOC complaint against the Daughters of Charity Health System. Id. The court further found that the plaintiff failed to file a federal Title VII action within ninety days of receipt of the EEOC's first "Notice of Right to Sue" letter and, therefore, his complaint was time-barred. Id.

The court also rejected plaintiff's argument for equitable tolling, finding that the plaintiff had pled "no extraordinary circumstances that prevented him from filing this suit on time"[11] and that plaintiff had signed and dated the October 20, 2010 "Request for Notice of Right to Sue" which "afforded him clear and unambiguous notice of the 90-day filing requirement." Id. Finally, the court found that "granting Plaintiff leave to file a Third Amended Complaint against Defendant, particularly where Plaintiff has already had opportunity to litigate these claims in state court, would unduly prejudice Defendant by forcing it to defend against stale claims, and would likely also be futile." Id. at *8.

On February 17, 2012, plaintiff appealed the District Court's decision to the United States Court of Appeals for the Ninth Circuit. In his appeal, plaintiff argued "[m]y SAC [second amended complaint] deserves equitable tolling (even without second notice of right to sue)." Plaintiff argued that there was "'prejudice by the defendants' in pursuing this case because Mr Feldman represented the defendants in same state and federal lawsuits and actually drafted and signed the 'unfair consideration' on state lawsuit settlement." The plaintiff further argued that the "Court rules [sic] that ONLY Daughters of Charity SAC is dismissed. This is another injustice committed by Mr Feldman to save his Corporate Defendants. Another grief to the Plaintiff." (capitalization in original). Plaintiff asked the court to apply equitable tolling, and stated that he "believes that this case must be transferred to another Court with fair, unbiased and just consideration on both sides and without Littler / Mr Feldman further legal representation [sic] in district and appellate courts."

On November 12, 2014, the Ninth Circuit affirmed Judge Koh's dismissal of plaintiff's second amended complaint against the Daughters of Charity Health System, stating that "[b]ecause Ilaw failed to file his Title VII claims within 90 days of receiving his

---

[11] Plaintiff claimed his dissatisfaction with his attorney, Mr. Kornbluh, as the basis for equitable tolling. The District Court for the Northern District of California rejected this argument, stating that "an attorney's ordinary negligence generally is not a basis for equitable tolling." Ilaw v. Daughters of Charity Health Sys., et al., 2012 WL 381240, at *7.

right to sue letter, his Title VII action was untimely." Ilaw v. Daughters of Charity Health Sys., et al., 585 F. App'x 572 (9th Cir. 2014). The court also affirmed the District Court's decision that equitable tolling did not apply, stating that "counsel's failure to bring Title VII claims . . . was 'at best a garden variety claim of excusable neglect' that does not warrant equitable tolling . . . . Ilaw failed to exercise due diligence to preserve his legal rights." Id. at 573 (internal citations omitted). On December 8, 2014, the Ninth Circuit also denied plaintiff's petition for a rehearing and rejected the suggestion for a rehearing en banc on the issue of the second "Notice of Right to Sue."

On November 28, 2014, plaintiff petitioned the United States Supreme Court for a writ of certiorari, alleging that "the district court deprived Ilaw his constitutional rights under full and equal benefit of laws and proceedings when a material fact - Title VII second notice of right - was mooted."  Plaintiff also argued that the "Ninth Circuit affirmed the deprivation and disregarded the same material fact - second notice - without justification, without written findings of fact and reasons for its decision."  On February 23, 2015, the Supreme Court denied the petition for a writ of certiorari. See Ilaw v. Daughters of Charity Health Sys., 135 S. Ct. 1414 (2015).

On October 18, 2013, plaintiff filed another complaint with the United States District Court for the Northern District of California against numerous defendants, including Littler Mendelson, P.C., Robert S. Domingues, Christopher E. Cobey, Karin M. Cogbill, Joshua Z. Feldman, Daughters of Charity Health System, Robert Issai, County of Santa Clara, California, the Judicial Council of California, David H. Yamasaki, JAMs, Catherine A. Gallagher, Patricia M. Lucas, Conrad L. Rushing, and Lucy H. Koh.[12]  Plaintiff again alleged violations of his constitutional rights and causes of action under 42 U.S.C. §§ 1983, 1985, and 1986 (2012), and filed a motion to proceed in forma pauperis.  The case was assigned to Judge Jeffrey S. White.

On October 22, 2013, the court denied the motion to proceed in forma pauperis and found that the complaint failed to state a federal claim. The court gave the plaintiff leave to amend. On November 12, 2013, plaintiff filed his amended complaint and renewed his motion to proceed in forma pauperis in the United States District Court for the Northern District of California. Plaintiff stated that while writing his amended complaint for the District Court, he suffered from health complications:

> On November 6, 2013, without sleep and with utmost anger while writing his first amended complaint, No.13cv04851, Ilaw had shortness of breath and sharp chest pain early evening [sic]. Ilaw was rushed to Kaiser Permanente Santa Clara Emergency for cardiac arrest, a mild myocardial

---

[12] These plaintiffs include the original parties, the Daughters of Charity Health System and Littler Mendelson, P.C., as well as various attorneys associated with Littler Mendelson, P.C., along with judges related to the case.  The plaintiff also named David Yamasaki, whose name appears on the official stamp on documents from the Santa Clara County, California court as the "Chief Executive Officer/Clerk."

ischemia with decreased delivery of oxygen and nutrients to his heart. Ilaw had cardiac surgery.

On December 3, 2013, the District Court denied the motion to proceed in forma pauperis and found that the first amended complaint failed to state a claim. The court gave the plaintiff leave to amend his complaint once more. On December 30, 2013, plaintiff filed a second amended complaint and renewed his motion to proceed in forma pauperis. Plaintiff alleged:

Ilaw – as defenseless indigent working-class male litigant belonging to ethnic minority – is entitled to a relief as he suffered and continue to suffer proximate causes of outrage when state and private actors deprive him of his constitutional rights, directly and indirectly, in disguise of objectivity with conscious pattern of antagonism and legal malice.

On January 14, 2014, the District Court dismissed all of plaintiff's claims, with prejudice, finding that the plaintiff had failed to state a federal claim. The court found that the plaintiff failed to set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief'" and instead provided a "lengthy narrative of proceedings in other court cases . . . . Scattered throughout . . . are some assertions that the conduct of certain defendants violated Plaintiff's constitutional rights."

The court further found that the plaintiff only made "conclusory allegations" under his Section 1983 claim. The court also dismissed the plaintiff's claims under Sections 1985 and 1986, finding that the plaintiff had failed to "allege facts showing any defendants influenced or sought to influence a juror, witness, or party by 'force, intimidation or threat'" and that the plaintiff had failed to "allege facts that show he was denied access to state courts because he was a member of a protected class."

The court also dismissed the allegations against the judges named as defendants under the doctrine of judicial immunity, finding that the allegations arose from actions related to the judicial process and, therefore, those actions were subject to immunity. The court stated that it "recognizes Plaintiff is proceeding pro se. However, the Court has given him leave to amend twice, and it concludes that any further attempts to amend would be futile." The court also dismissed plaintiff's motion to proceed in forma pauperis, stating "[c]ourts must deny an in forma pauperis application under certain circumstances, including when the underlying complaint sought to be filed is frivolous or when it fails to state a claim upon which relief may be granted."

On January 15, 2014, plaintiff filed a notice of appeal, and an application to proceed in forma pauperis on appeal, with the District Court. The District Court denied the application, stating "[a]n appeal may not be taken in forma pauperis if the district court certifies that it is taken in bad faith . . . . The Court concludes that the appeal is not taken in good faith." The United States Court of Appeals for the Ninth Circuit also denied plaintiff's motion to proceed in forma pauperis, stating, "[t]he district court has denied appellant leave to proceed on appeal in forma pauperis. We deny appellant's motion to proceed in forma pauperis because we also find the appeal is frivolous." In a separate

order, the Ninth Circuit affirmed the District Court's judgment, finding that "the questions raised in this appeal are so insubstantial as not to require further argument."

Plaintiff filed his complaint in this court on February 24, 2015. Plaintiff alleges violations of his constitutional and civil rights. Plaintiff cites to the Due Process clauses of the Fifth and Fourteenth Amendments to the United States Constitution, as well as the Equal Protection clause of the Fourteenth Amendment. Furthermore, plaintiff asserts claims under 42 U.S.C. §§ 1983, 1985(2), 1985(3), and the tort of outrage/physical illness. Plaintiff names the United States, Judge Lucy H. Koh, and Littler Mendelson, P.C. as defendants. Along with his complaint, plaintiff also filed a "MOTION/NOTICE FOR DISQUALIFICATION OF NINTH CIRCUIT COURTS," (capitalization in original), requesting disqualification of the Ninth Circuit "as [the] jurisdictional venue to litigate the attached federal claim pursuant to 28 U.S.C. Section 455." Plaintiff argues that there is "alleged 'home' circuit deliberate indifference" and that he "believes that disqualification is warranted pursuant to 28 U.S.C. § 455."[13]

In his complaint, plaintiff argues that he is "burdened with Koh's personal, administrative and executive act while Koh is a professional ally of Gallagher." Plaintiff cites a press release containing a statement by Judge Gallagher regarding Judge Koh's nomination to the United States District Court for the Northern District of California, which said "Judge Koh is universally held in high esteem and well-liked. She has a reputation for being prepared, thoughtful, intellectually honest, and fair.  She has demonstrated exemplary judicial temperament." Plaintiff argues that a "meeting of the minds substantiated conspiratorial objective when Littler opposed the motion about second notice while Koh granted and mooted intending to impede the second notice of right to sue defeating due course and administration of justice." (internal citations omitted). Plaintiff states that "[a]fter Koh, Ilaw perceives that all judicial officers displayed deliberate indifference to his protected federal rights and not one applied corrective action." He argues that the "foregoing judicial acts . . . blatantly disregard pro se Ilaw's protected rights resulting to [sic] 'actual' deprivation, dismissing the complaint in disguise of objectivity."

Plaintiff states he is "overburdened as [a] disadvantaged class," as a "male alleging gender discrimination," as a "male litigant against female authority," as a "male litigant against female animus," as a "similarly situated litigant against professional Littler," and as an "unrepresented, pro se class."  Plaintiff also submits an excerpt of a New York Times article containing an interview with Judge Gallagher in which she stated, "[i]t is cheaper for people who can afford to buy a judge because you're not having your attorney sitting around for two or three hours waiting for a hearing to be held."[14]  Plaintiff argues

---

[13] The statute at 28 U.S.C. § 455 (2012) states, in relevant part, that "[a]ny justice, judge, or magistrate [magistrate judge] of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

[14] The article discusses the for-profit dispute resolution industry in California in which individual parties can "buy a judge" to help them resolve their dispute without going to

that the court "must recognize that the heart of the attached USDC DC Complaint is due process violations 'under color of state law' and the colorable claims of the Plaintiff: 'double jeopardy' discriminations - under Civil Rights Act of 1964, Title VII (employment) and - under Civil Rights Act of 1964, Title IX (administration of justice)." Plaintiff further argues that the court:

> must not be persuaded when and where federal obligation of judicial officers is primarily challenged. The totality of USDC DC Complaint is of high unusual gravity deserving special interest to the public . . . . The transfer would be of great importance when [the] "home" circuit displayed deliberate indifference to guaranteed rights alleged with professional misconduct and actual judicial bias - a federal question of fact.

Plaintiff argues that the court "should not summarily dismiss the claim as frivolous as the Court is simply without jurisdiction over the subject matter and private parties." Plaintiff requests this court to dismiss his current complaint, without prejudice, and asks that this court transfer his case to the District Court for the District of Columbia so he may pursue his claims there.

## DISCUSSION

The court recognizes that plaintiff is proceeding pro se, without the assistance of counsel. When determining whether a complaint filed by a pro se plaintiff is sufficient to invoke review by a court, pro se plaintiffs are entitled to liberal construction of their pleadings. See Haines v. Kerner, 404 U.S. 519, 520–21 (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9–10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750 F.3d 1320, 1322 (Fed. Cir. 2014); Diamond v. United States, 115 Fed. Cl. 516, 524, aff'd, 2015 WL 527500 (Fed. Cir. Feb. 10, 2015), cert. denied, 135 S. Ct. 1909 (2015). "However, '"[t]here is no duty on the part of the trial court to create a claim which [the plaintiff] has not spelled out in his [or her] pleading."'" Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). "While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v. United States, 93 Fed. Cl. 163, 165 (2010) (citing Hughes v. Rowe, 449 U.S. at 9 and Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.) ("Plaintiff bears the burden of showing jurisdiction by a preponderance of the evidence."), reh'g and reh'g en banc denied (Fed. Cir. 2002)); see also Shelkofsky v. United States, 119 Fed. Cl. 133, 139 (2014) ("[W]hile the court may excuse ambiguities in a pro se plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (quoting Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995)); Harris v. United States, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's

that Littler Mendelson, P.C. "bought Gallagher to save litigation costs while the judicial officers violate [sic] civil local court ADR rule."

In this court, plaintiff requests general damages, including "compensation for physical pain and suffering, as well as emotional distress," special damages relating to specific pecuniary losses such as "lost earnings, medical expenses, and loss of earning capacity," punitive damages, and "[o]ther relief as this Court may deem just and proper." Less than a month after filing his complaint, plaintiff filed a motion for voluntary dismissal, without prejudice, citing a lack of jurisdiction in this court, and requesting that the case be transferred to the United States District Court for the District of Columbia. As grounds for dismissal, plaintiff states "[h]erein, Plaintiff alleges private parties, Littler Mendelson P.C. and Lucy H. Koh, as named Defendants. Accordingly, to the extent that the plaintiff is bringing a claim against a defendant other than the United States, plaintiff is removing the case to district court pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction."

The defendant responded to plaintiff's motion for voluntary dismissal and his request for transfer to the District Court for the District of Columbia. The defendant argues that dismissal of the complaint is proper based on a lack of jurisdiction. The defendant, however, opposes the transfer of the case to District Court and, instead, recommends summary dismissal, stating "Mr. Ilaw's claims are frivolous and transfer would not serve the interests of justice." According to the defendant, this court should not transfer this action to the United States District Court for the District of Columbia because it "would not cure the underlying deficiencies in his [plaintiff's] claims or provide cause for equitable tolling." Defendant asserts that the District Court for the Northern District of California correctly dismissed the plaintiff's claims in the second District Court action,[15] which alleged violations of his constitutional rights and causes of action under 42 U.S.C. §§ 1983, 1985, and 1986, because they arose from the first District Court action,[16] in which the defendant prevailed by showing that plaintiff's claims under Title VII were time-barred. Defendant also argues transfer would not "substantiate meritless claims for alleged misconduct in the dismissal" of the first Northern District Court action and that "transfer would not be an efficient use of judicial resources because Mr. Ilaw's claims would not survive a motion to dismiss for the same reasons" that plaintiff's claims did not survive in the second Northern District Court action.

On March 30, 2015, plaintiff submitted a reply to the defendant's response to plaintiff's Motion for Dismissal Without Prejudice. Plaintiff attached a proposed complaint, apparently intended to be submitted to the United States District Court for the District of Columbia, that he claims was "elaborately re-written against the parties." Plaintiff argues

---

court. See Aaron Glantz, "Clogging of Courts Expected After Cuts" N.Y. Times, July 21, 2011 (available at http://www.nytimes.com/2011/07/22/us/22bcshort.html?_r=0).

[15] Ilaw v. Littler Mendelson P.C. et al., No. 13-cv-04851 (N.D. Cal. Jan. 14, 2014).

[16] Ilaw v. Daughters of Charity Health Sys., et al., No. 11-cv-02752, 2012 WL 381240 (N.D. Cal. Feb. 6, 2012).

pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting Minehan v. United States, 75 Fed. Cl. at 253)).

It is well established that "'subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.'" Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)). "[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 131 S. Ct. 1197, 1202 (2011); see also Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." (citing Arbaugh v. Y & H Corp., 546 U.S. at 514)); Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340, 1342 (Fed. Cir. 2001) ("[A] court has a duty to inquire into its jurisdiction to hear and decide a case." (citing Johannsen v. Pay Less Drug Stores N.W., Inc., 918 F.2d 160, 161 (Fed. Cir. 1990))); View Eng'g, Inc. v. Robotic Vision Sys., Inc., 115 F.3d 962, 963 (Fed. Cir. 1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not."). "The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." Arbaugh v. Y & H Corp., 546 U.S. at 506; see also Cent. Pines Land Co., L.L.C. v. United States, 697 F.3d 1360, 1364 n.1 (Fed. Cir. 2012) ("An objection to a court's subject matter jurisdiction can be raised by any party or the court at any stage of litigation, including after trial and the entry of judgment." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506)); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1346 (Fed. Cir. 2008) ("[A]ny party may challenge, or the court may raise sua sponte, subject matter jurisdiction at any time." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506; Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1127 (2005); and Fanning, Phillips & Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998))); Pikulin v. United States, 97 Fed. Cl. 71, 76, appeal dismissed, 425 F. App'x 902 (Fed. Cir. 2011). In fact, "[s]ubject matter jurisdiction is an inquiry that this court must raise *sua sponte*, even where . . . neither party has raised this issue." Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings, 370 F.3d 1354, 1369 (Fed. Cir.) (citing Textile Prods., Inc. v. Mead Corp., 134 F.3d 1481, 1485 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir.), cert. denied, 525 U.S. 826 (1998)), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. granted in part sub. nom Lab. Corp. of Am. Holdings v. Metabolite Labs., Inc., 546 U.S. 975 (2005), cert. dismissed as improvidently granted, 548 U.S. 124 (2006).

The Tucker Act grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2012). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289–90 (2009); United States v. Mitchell, 463 U.S. 206, 216 (1983); see also Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999).

"Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. at 216; see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); Smith v. United States, 709 F. 3d 1114, 1116 (Fed. Cir.), cert. denied, 134 S. Ct. 259 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d at 1343 ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."). In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The court wrote:

> The underlying monetary claims are of three types . . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver . . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605–06,] 372 F.2d [1002,] 1007–08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Eastport S.S., 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also [United States v. ]Testan, 424 U.S. [392,] 401–02 [1976] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is

commonly referred to as claims brought under a "money-mandating" statute.

Ontario Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004); see also Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon "'can fairly be interpreted as mandating compensation by the Federal Government.'" United States v. Navajo Nation, 556 U.S. at 290 (quoting United States v. Testan, 424 U.S. 392, 400 (1976)); see also United States v. White Mountain Apache Tribe, 537 U.S. at 472; United States v. Mitchell, 463 U.S. at 217; Blueport Co., LLC v. United States, 533 F.3d 1374, 1383 (Fed. Cir. 2008), cert. denied, 555 U.S. 1153 (2009). The source of law granting monetary relief must be distinct from the Tucker Act itself. See United States v. Navajo Nation, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts)."). "'If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.'" Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1308 (Fed. Cir. 2008) (quoting Greenlee Cnty., Ariz. v. United States, 487 F.3d at 876); Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (The absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act."); Peoples v. United States, 87 Fed. Cl. 553, 565–66 (2009).

When deciding a case based on a lack of subject matter jurisdiction or for failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007) (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 n.1 (2002)))); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982), recognized by Davis v. Scherer, 468 U.S. 183, 190 (1984); United Pac. Ins. Co. v. United States, 464 F.3d 1325, 1327–28 (Fed. Cir. 2006); Samish Indian Nation v. United States, 419 F.3d 1355, 1364 (Fed. Cir. 2005); Boise Cascade Corp. v. United States, 296 F.3d 1339, 1343 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2002), cert. denied, 538 U.S. 906 (2003).

This court is without jurisdiction to hear those allegations not against the United States. All claims filed in the United States Court of Federal Claims must be filed against the United States as the defendant. See RCFC 10(a) (2014); see also 28 U.S.C. § 1491(a); United States v. Sherwood, 312 U.S. 584, 588 (1941) (citation omitted) ("[I]f the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court." (citation omitted)); Slattery v. United States, 635

F.3d 1298, 1321 n.1 (Fed. Cir.), aff'd, 710 F.3d 1336 (Fed. Cir.), cert. denied, 134 S. Ct. 1276 (2014); May v. United States, 80 Fed. Cl. at 444 ("Jurisdiction, then, is limited to suits against the United States."), aff'd, 293 F. App'x 775 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2008); Eskridge Research Corp. v. United States, 92 Fed. Cl. 88, 95 (2010) (citing Howard v. United States, 230 F. App'x 975, 976 (Fed. Cir.) ("The United States is the only proper defendant before the Court of Federal Claims."), reh'g denied (Fed. Cir. 2007)); Shalhoub v. United States, 75 Fed. Cl. 584, 585 (2007) ("When a plaintiff's complaint names private parties, or state agencies, rather than federal agencies, this court has no jurisdiction to hear those allegations."); Stephenson v. United States, 58 Fed. Cl. 186, 190 (2003) ("[T]he only proper defendant for any matter before this court is the United States, not its officers, nor any other individual.") (emphasis in original).

In his complaint, plaintiff raises allegations against the United States and private parties Littler Mendelson, P.C. and District Court Judge Lucy H. Koh. As even plaintiff concedes in his motion to dismiss the complaint he filed in this court, "to the extent that the plaintiff is bringing a claim against a defendant other than the United States, Plaintiff is removing the case to district court pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction." This court lacks jurisdiction over the claims against private parties Littler Mendelson, P.C. and Judge Koh, and, therefore, those claims must be dismissed.

In this court, plaintiff also asserts a "procedural due process claim when Koh mooted Ilaw's October 2011 emergency motion" and a "substantive due process claim when Koh mooted a material fact to equitable tolling at issue." (internal citations omitted). Plaintiff alleges violations of the Due Process clauses of the Fifth Amendment and Fourteenth Amendments of the United States Constitution. The United States Court of Appeals for the Federal Circuit, however, has held that this court does not possess jurisdiction to consider claims arising under the Due Process clauses of the Fifth and Fourteenth Amendments. See Crocker v. United States, 125 F.3d 1475, 1476 (Fed. Cir. 1997) (citing LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995)) (no jurisdiction over a due process violation under the Fifth and Fourteenth Amendments); see also Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.) ("The law is well settled that the Due Process clauses of both the Fifth and Fourteenth Amendments do not mandate the payment of money and thus do not provide a cause of action under the Tucker Act." (citing LeBlanc v. United States, 50 F.3d at 1028), cert. denied, 134 S. Ct. 259 (2013); In re United States, 463 F.3d 1328, 1335 n.5 (Fed. Cir.) ("[B]ecause the Due Process Clause is not money-mandating, it may not provide the basis for jurisdiction under the Tucker Act."), reh'g and reh'g en banc denied (Fed. Cir. 2006), cert. denied sub nom. Scholl v. United States, 552 U.S. 940 (2007); Acadia Tech., Inc. & Global Win Tech., Ltd. v. United States, 458 F.3d 1327, 1334 (Fed. Cir. 2006); Collins v. United States, 67 F.3d 284, 288 (Fed. Cir.) ("[T]he due process clause does not obligate the government to pay money damages."), reh'g denied (Fed. Cir. 1995); Mullenberg v. United States, 857 F.2d 770, 773 (Fed. Cir. 1988) (finding that the Due Process clauses "do not trigger Tucker Act jurisdiction in the courts"); Murray v. United States, 817 F.2d 1580, 1583 (Fed. Cir. 1987) (noting that the Fifth Amendment Due Process clause does not include language mandating the payment of money damages); Harper v. United States, 104 Fed. Cl. 287, 291 n.5 (2012); Hampel v. United States, 97 Fed. Cl. 235, 238, aff'd, 429 F. App'x 995 (Fed. Cir. 2011), cert. denied, 132 S. Ct. 1105 (2012); McCullough v. United States,

76 Fed. Cl. 1, 4 (2006), appeal dismissed, 236 F. App'x 615 (Fed. Cir.), reh'g denied (Fed. Cir.), cert. denied, 552 U.S. 1050 (2007) ("[N]either the Fifth Amendment Due Process Clause . . . nor the Privileges and Immunities Clause provides a basis for jurisdiction in this court because the Fifth Amendment is not a source that mandates the payment of money to plaintiff."). Due process claims "must be heard in District Court." Kam–Almaz v. United States, 96 Fed. Cl. 84, 89 (2011) (citing Acadia Tech., Inc. & Global Win Tech., Ltd. v. United States, 458 F.3d at 1334), aff'd, 682 F.3d 1364 (Fed. Cir. 2012); see also Hampel v. United States, 97 Fed. Cl. at 238. The court lacks jurisdiction over the claims under the Due Process clauses of the Fifth and Fourteenth Amendments, and therefore those claims must be dismissed.

In addition, plaintiff alleges his rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution have been violated. It is well established, however, that the Equal Protection Clause of the Fourteenth Amendment is not a money-mandating provision which establishes jurisdiction in this court. See LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (A claim under the Equal Protection Clause of the Fourteenth Amendment is not sufficient for jurisdiction in the United States Court of Federal Claims because it does not "mandate payment of money by the government." (citing Carruth v. United States, 224 Ct. Cl. 422, 445 (1980))); Potter v. United States, 108 Fed. Cl. 544, 548 (2013) (finding that "this Court lacks jurisdiction over violations under the Due Process Clauses of the Fifth and Fourteenth Amendments . . . because they do not mandate payment of money by the government.") (internal citations omitted) (modifications in original); Warren v. United States, 106 Fed. Cl. 507, 511 (2012) (holding that, since the "Fourteenth Amendment guarantee of equal protection" is not money mandating, "[a]ccordingly, the court lacks jurisdiction over these claims."); Pleasant-Bey v. United States, 99 Fed. Cl. 363, 367 (2011) appeal dismissed, 464 F. App'x 879 (Fed. Cir. 2012) ("However, this court does not have jurisdiction over claims based on either the Thirteenth Amendment or Fourteenth Amendment because neither mandates the payment of money damages.").

Moreover, the court does not have subject matter jurisdiction over actions arising under sections of the Civil Rights Acts, including 42 U.S.C. §§ 1983 and 1985. See Pikulin v. United States, 97 Fed. Cl. 71, 77 (2011) ("Plaintiff also cites various provisions of the Civil Rights Acts, including §1981, §1983, §1985, and §1986, as bases for his claim. The court does not possess jurisdiction to entertain claims based on these statutes." (citing Marlin v. United States, 63 Fed. Cl. 475, 476 ("[T]he Court does not have jurisdiction to consider civil rights claims brought pursuant to 42 U.S.C. §§ 1981, 1983, or 1985 because jurisdiction over claims arising under the Civil Rights Act resides exclusively in the district courts."), appeal dismissed, 140 F. App'x 256 (Fed. Cir. 2005), and Anderson v. United States, 22 Cl. Ct. 178, 179 n. 2 (1990) (noting that the United States Claims Court lacked jurisdiction to entertain claims under § 1983, § 1985(3), and § 1986), aff'd, 937 F.2d 623 (Fed. Cir. 1991) (unpublished table decision)), appeal dismissed, 425 F. App'x 902 (Fed. Cir. 2011)); Hubbard v. United States, 80 Fed. Cl. 282, 283 (noting that the Civil Rights Act encompasses 42 U.S.C. § 1988), aff'd, 315 F. App'x 307 (Fed. Cir. 2009); Schweitzer v. United States, 82 Fed. Cl. 592, 595 (2008) ("Likewise, this court does not have jurisdiction over the plaintiffs' civil rights claims brought under 42 U.S.C. §§ 1983, 1985 or 1986 (2000), because it is well-settled that jurisdiction over such claims lies exclusively

in the district courts." (citing Stamps v. United States, 73 Fed. Cl. 603, 609-10 (2006) (citing Anderson v. United States, 22 Cl. Ct. at 179)); Salman v. United States, 69 Fed. Cl. 36, 39 n.3 (2005) ("Plaintiff has also alleged unlawful prosecution on the part of the government, but has cited no money-mandating source of law that would afford him compensation for this alleged behavior of the government. Inasmuch as plaintiff's allegation might refer to the civil rights violations proscribed by 42 U.S.C. § 1983 (2000), this court has no jurisdiction over section 1983 claims." (citing Berdick v. United States, 222 Ct. Cl. 94, 612 F.2d 533, 536 (1979); Marlin v. United States, 63 Fed. Cl. at 476 (stating that this "[c]ourt does not have jurisdiction to consider civil rights claims brought pursuant to 42 U.S.C. §§ 1981, 1983, or 1985 because jurisdiction over claims arising under the Civil Rights Act resides exclusively in the district courts") (citations omitted)). Therefore, to the extent that plaintiff alleges claims under 42 U.S.C. §§ 1983 and 1985, those claims also must be dismissed for a lack of subject matter jurisdiction.

Furthermore, plaintiff asserts a "tort of outrage/physical illness" against the United States and Judge Koh. Plaintiff states he experienced "major depression and anxiety . . . without appetite and without social enjoyment in life" and suffered "a mild myocardial ischemia." Plaintiff attributes these incidents to the defendants and Littler Mendelson, P.C., asserting that, "[t]he federal judiciary branch of the Ninth Circuit exhibited deliberate indifference to a pro se class inflicting intentional and extreme emotional distress resulting to physical illness." Plaintiff also requests "[g]eneral damages" for "physical pain and suffering" and "emotional distress." (emphasis in original). This court, however, does not possess jurisdiction over claims that sound in tort. See 28 U.S.C. § 1491(a) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."); see also Keene Corp. v. United States, 508 U.S. 200, 214 (1993); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d at 1343; Alves v. United States, 133 F.3d 1454, 1459 (Fed. Cir. 1998); Brown v. United States, 105 F.3d 621, 623 (Fed. Cir.), reh'g denied (Fed. Cir. 1997); Golden Pac. Bancorp v. United States, 15 F.3d 1066, 1070 n.8 (Fed. Cir.), reh'g denied, en banc suggestion declined (Fed. Cir.), cert. denied, 513 U.S. 961 (1994); Hampel v. United States, 97 Fed. Cl. at 238; Woodson v. United States, 89 Fed. Cl. 640, 650 (2009); McCullough v. United States, 76 Fed. Cl. at 3; Agee v. United States, 72 Fed. Cl. 284, 290 (2006); Zhengxing v. United States, 71 Fed. Cl. 732, 739, aff'd, 204 F. App'x 885 (Fed. Cir.), reh'g denied (Fed. Cir. 2006). Therefore, any of plaintiff's claims that sound in tort, likewise, must be dismissed.

To the extent that the plaintiff is asking this court to review the decisions or actions of the United States Court of Appeals for the Ninth Circuit, the United States District Court for the Northern District of California, or one of its judges, this court does not have jurisdiction to do so. Plaintiff claims "judicial restraint" and "judicial discrimination" by the United States District Court in San Jose, the United States District Court in San Francisco, and the Ninth Circuit. Plaintiff contends that the Ninth Circuit courts "blatantly disregard pro se llaw's protected rights resulting to 'actual' deprivation, dismissing the complaint in disguise of objectivity." "[T]he Court of Federal Claims does not have jurisdiction to review the decisions of district courts or the clerks of district courts relating to proceedings before

those courts." Joshua v. United States, 17 F.3d 378, 380 (Fed. Cir. 1994); see also Mora v. United States, 118 Fed. Cl. 713, 716 (2014) ("[T]his court does not have jurisdiction to review the decisions of state courts, federal bankruptcy courts, federal district courts, or federal circuit courts of appeals.").[17]

Finally, the plaintiff requests a transfer of his claims to the United States District Court for the District of Columbia, acknowledging a lack of jurisdiction over his claims in this court. The transfer statute, 28 U.S.C. § 1631 (2012), requires that particular conditions be met for a case to be transferred to another court:

> Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631. Accordingly, to satisfy the statutory requirements to transfer a case: 1) the transferor court must lack jurisdiction, 2) the transfer must be in the "interest of justice," and 3) the transferee court must be one in which the action could have been brought at the time the claim was filed. See, e.g., Rodriguez v. United States, 862 F.2d 1558, 1559–60 (Fed. Cir. 1988); Mora v. United States, 118 Fed. Cl. at 716–17; Albino v. United States, 104 Fed. Cl. 801, 817–18 (2012); Cooper v. United States, 104 Fed. Cl. 306, 314–15 (2012); McGrath v. United States, 85 Fed. Cl. 769, 773 (2009). "A decision to transfer ultimately rests within the sound discretion of the transferor court, and the court may decline to transfer the case '[i]f such transfer "would nevertheless be futile given the weakness of plaintiff's case on the merits."'" Albino v. United States, 104 Fed. Cl. at 817–18 (quoting Faulkner v. United States, 43 Fed. Cl. 54, 56 (1999) (quoting Siegal v. United States, 38 Fed. Cl. 386, 390 (1997))). The United States Court of Appeals for the Federal Circuit has held that "[t]he phrase 'if it is in the interest of justice' relates to claims which are nonfrivolous and as such should be decided on the merits." Galloway Farms, Inc. v. United States, 834 F.2d 998, 1000–01 (Fed. Cir. 1987) (quoting 28 U.S.C. § 1631 and citing Zinger Constr. Co. v. United States, 753 F.2d 1053, 1055 (Fed. Cir. 1985)).

Although, as discussed above, this court lacks jurisdiction over plaintiff's claims, this court finds that transfer to the United States District Court for the District of Columbia

---

[17] In his complaint, plaintiff cites to the 7th Amendment right to a jury. As indicated in Gonzalez-McCaulley Investment Group, Inc. v. United States, "'[i]t has long been settled that the Seventh Amendment right to a trial by jury does not apply in actions against the Federal Government.' Lehman v. Nakshian, 453 U.S. 156, 160 (1981). There are thus no jury trials in the Court of Federal Claims, and cases are decided by the judge as the trier of fact." Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 712 n.1 (2010) (citing Persyn v. United States, 34 Fed. Cl. 187, 194 (1995)).

would not be in the "interest of justice," given the exhaustive history of plaintiff's prior, unsuccessful litigation in State and Federal Courts, and the prior findings by numerous courts of the frivolous and vexatious nature of plaintiff's allegations. Plaintiff is a frequent litigator of cases brought in both State and Federal courts, where his cases on matters related to the ones now filed in this court have been dismissed repeatedly. Moreover, not only has Mr. Ilaw previously filed substantially similar complaints in a variety of jurisdictions, on April 21, 2015, Mr. Ilaw filed a complaint in the United States District Court for the District of Columbia, shortly after he filed the above captioned case in this court. As of the filing of this opinion, plaintiff's case in the District Court for the District of Columbia is still pending, and absolutely no purpose would be served to transfer the above captioned case to the same court. See Ilaw v. Dep't of Justice, et al., No. 15-cv-00609 (D.D.C. Apr. 21, 2015). This court, therefore, declines to transfer the above captioned Case Number 15-173.

## CONCLUSION

Plaintiff's motion to dismiss for lack of subject matter jurisdiction is, hereby, **GRANTED**. Plaintiff's complaint is **DISMISSED**, with prejudice. No transfer order will be issued.  The Clerk of the Court shall enter **JUDGMENT** consistent with this opinion.

**MARIAN BLANK HORN**
Judge